IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

THE PENN MUTUAL LIFE INSURANCE :
COMPANY, :
 :
       Plaintiff, :
 :
v. : Civ. No. 09-300-LPS
 :
NORMA ESPINOSA 2007-1 :
INSURANCE TRUST, CHRISTIANA :
BANK & TRUST COMPANY, as trustee :
of the NORMA ESPINOSA 2007-1 :
INSURANCE TRUST, KEVIN BECHTEL, :
and INFINITY WEALTH ADVISORS, :
LLC, :
 :
       Defendants. :

---

Joseph C. Schoell, Katherine Villanueva, DRINKER BIDDLE & REATH LLP, Wilmington DE

    Attorneys for Plaintiff The Penn Mutual Life Insurance Company

David J. Baldwin, Michael B. Rush, POTTER ANDERSON & CORROON LLP, Wilmington, DE
John E Failla, Elise A. Yablonski, Nathan Lander, PROSKAUER ROSE LLP, New York, NY

    Attorneys for Defendant The Norma Espinosa 2007-1 Insurance Trust and Wilmington Savings Fund Society, FSB (as successor-in-interest to Christiana Bank & Trust Company, as Trustee

George T. Lees, Kaan Ekiner, RAWLE & HENDERSON LLP, Wilmington, DE
Charles Geitner, HINSHAW & CULBERTSON LLP, Tampa, FL

    Attorneys for Defendant Kevin Bechtel

**MEMORANDUM OPINION**

September 29, 2014
Wilmington, DE

[signature]

**STARK, U.S. District Judge:**

Pending before the Court are five motions: (1) Defendant and Counterclaim-Plaintiff Norma Espinosa 2007-1 Insurance Trust's ("Espinosa Trust") Motion to Exclude Rebuttal Expert Opinion of Dr. Harold Skipper (D.I. 205); (2) Defendant Kevin Bechtel's Motion for Summary Judgment (D.I. 210); (3) the Espinosa Trust's Motion for Leave to File Third Party Contribution Complaint (D.I. 241); (4) Plaintiff Penn Mutual Life Insurance Company's ("Penn Mutual" or "Plaintiff") Request for Leave of Court to Deposit Policy Proceeds Into Court Registry (D.I. 263); and (5) the Espinosa Trust's Motion for Leave to Amend their Answer and Counterclaims (D.I. 265).

Penn Mutual filed this action for Declaratory Judgment seeking a judgment relative to its rights and obligations under a policy of life insurance issued on the life of Norma Espinosa ("Espinosa policy"). (D.I. 1) Plaintiff asserts that the Espinosa policy is void or voidable due to a lack of insurable interest at inception and/or material misrepresentations in the application. (*Id.* at ¶ 1) Specifically, Plaintiff claims that Norma Espinosa was approached prior to March 26, 2007 by Steven Brasner, Kevin Bechtel, and/or certain other promoters to participate in a "stranger originated life insurance" ("STOLI") scheme, whereby investors seek to obtain pecuniary interests in life insurance policies on individuals with whom they have no prior relationship. (*Id.* at ¶¶ 17, 7) Espinosa was approved for a $7 million insurance policy, with the Espinosa Trust named as the beneficiary. (*Id.* at ¶¶ 18, 32) Plaintiff asserts that "shortly after the issuance of the Espinosa Policy and in accordance with the preconceived plan, Ms. Espinosa took all of the steps necessary to effectuate a transfer of the Espinosa Policy . . . to an investor whom Ms. Espinosa did not know prior to completing the Application." (*Id.* at ¶ 34)

1

The Court heard oral argument on the pending motions on June 23, 2014. (*See* D.I. 275 ("Tr.") Additional factual and procedural background is provided, as needed, throughout the remainder of this Opinion.

## Penn Mutual's Motion to Deposit Funds

Ms. Espinosa died on April 27, 2014. (D.I. 262) On May 22, 2014, the Espinosa Trust provided proof of Espinosa's death to Penn Mutual. (D.I. 268) Penn Mutual responded by requesting permission from the Court to deposit the proceeds of the Espinosa policy (approximately $7,000,000) into the Court's registry. (D.I. 263) Penn Mutual seeks to have the Court hold on to these funds until the conclusion of this case, at which time the Court will have determined whether the Espinosa policy is void or voidable or, alternatively, enforceable, which will be decisive in demonstrating to whom the deposited funds should be paid or returned. Penn Mutual does not wish to pay the policy proceeds to the Espinosa Trust during the pendency of these proceedings because Penn Mutual believes it has asserted meritorious claims that will result in a declaration that it need never pay these proceeds to the Espinosa Trust; Penn Mutual is concerned that, in the meantime, if it pays the funds to the Espinosa Trust these funds will not be recoverable even after Penn Mutual prevails in this litigation. (D.I. 263 at 2) Penn Mutual anticipates "that the Trust would disperse any proceeds to the investors who acquired the beneficial interest in the Trust shortly after the issuance of the Espinosa Policy. The Trust therefore would be unable to disgorge the policy proceeds at the conclusion of this litigation." (*Id.*)

Pursuant to Federal Rule of Civil Procedure 67:

> If any part of the relief sought is a money judgment or the

2

> disposition of a sum of money or some other deliverable thing, a
> party – on notice to every other party and by leave of court – may
> deposit with the court all or part of the money or thing, whether or
> not that party claims any of it.

"The issue of whether to allow a Rule 67 deposit lies within the discretion of the Court." *Progressive Cas. Ins. Co. v. Drive Trademark Holdings LP*, 680 F. Supp. 2d 639, 641 (D. Del. 2010). "The purpose of a deposit in court is to relieve the depositor of responsibility for a fund in dispute, while the parties litigate their difference with respect to the fund." *Id.* (citing 13 James Wm. Moore, et al., Moore's Federal Practice § 67.02 (3d ed. 2009)).

The Court will grant Penn Mutual's request. The Espinosa Trust's opposition to permitting Penn Mutual to make the deposit is that Penn Mutual is purportedly "attempt[ing] to use Rule 67 of the Federal Rules of Civil Procedure to insulate itself from the consequences of its breach of contract, and its breach of the duty of good faith and fair dealing, arising from the failure to pay the death benefit upon receipt of 'due proof of the death of the Insured,' as required under the Policy." (D.I. 269 at 1) The impact, if any, of Penn Mutual's willingness to pay the proceeds to the Court will be determined at a later stage of this case. For instance, the Espinosa Trust may move *in limine* to keep the fact of the payment to the Court from the jury. Whether or not such a motion would be granted, the Court believes it is an appropriate exercise of its discretion to allow Penn Mutual to pay the disputed funds into the Court's registry, which will ensure that the proceeds are available to be paid to whichever is the proper party at the conclusion of this case. The Espinosa Trust's additional argument that there is no pending claim in this case seeking proceeds as money damages is unavailing as the Court is today granting the Espinosa Trust's motion for leave to amend its counterclaims to assert a claim for precisely those

3

proceeds.

## The Espinosa Trust's Motion for Leave to Amend Answer and Counterclaims

On June 6, 2014, the Espinosa Trust filed a motion for leave to file an Amended Answer and Counterclaims to the Second Amended Complaint. (D.I. 265) The Espinosa Trust seeks leave to assert breach of contract and breach of the duty of good faith claims due to Penn Mutual's alleged failure to pay the approximately $7 million death benefit after the death of Norma Espinosa, on or about April 27, 2014. (D.I. 266) The proposed amended pleading also asserts claims seeking return of the premiums paid in the event the Espinosa policy is declared void and adds factual allegations based on facts learned in discovery "concerning Penn Mutual's real reason for this lawsuit." (*Id.* at 1) Penn Mutual opposes the motion, insisting that there has been no breach of contract, that litigating the breach of contract and bad faith claims in advance of a determination that the underlying contract is valid and enforceable is inefficient, and that granting the motion will delay the case. (D.I. 268)

"The court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P 15(a)(2). In the Third Circuit, "undue prejudice is 'the touchstone for the denial of leave to amend.'" *Justofin v. Metro. Life Ins. Co.*, 372 F.3d 517, 526 (3d Cir. 2004) (quoting *Heyl & Patterson Int'l Inc. v. F.D. Rich Hous. of the Virgin Islands, Inc.*, 663 F.2d 419, 425 (3d Cir. 1981)). "In the absence of substantial or undue prejudice, denial must be grounded in bad faith or dilatory motives, truly undue or unexplained delay, repeated failure to cure deficiency by amendments previously allowed or futility of amendment." *Id.* at 526.

The Espinosa Trust initially filed a motion for leave to amend shortly after the completion of discovery, in an effort "to conform the pleadings to facts developed during discovery,

4

primarily from Penn Mutual's own witnesses and documents." (D.I. 266 at 4) After that initial motion for leave was fully briefed and remained pending, Ms. Espinosa died, causing the Espinosa Trust to withdraw the initial motion for leave and file the pending second motion for leave. (D.I. 266) Much of the relief sought in the original motion is sought again by the pending motion.

Under the circumstances, the Court concludes that the Espinosa Trust's pending motion was not unduly delayed and granting it will not unfairly prejudice Penn Mutual. The Espinosa Trust has shown good cause for the timing of its request; it promptly filed its original and amended motions for leave after discovering information relevant to the case. Furthermore, the Espinosa Trust is not requesting additional discovery, and the relevant documents and testimony are already in the possession of Penn Mutual, so the Court does not expect the relief granted today to delay trial.

Nor is the Court persuaded that it will be inefficient, under the circumstances presented here, to litigate the validity and enforceability of the Espinosa policy at the same time the parties are litigating whether Penn Mutual has breached any contractual obligations under that policy and/or acted in bad faith. The Espinosa Trust's claims cannot be found, at this stage, to be futile based merely on Penn Mutual's denial of the Espinosa Trust's allegations, which must at this point be taken as true. Finally, any overlap between the proposed counterclaims seeking return of premiums paid on the Espinosa policy in the event that policy is found invalid and/or unenforceable does not, in this particular case, warrant denying the Espinosa Trust's request to add those counterclaims, given especially the uncertainty as to Penn Mutual's view as to whether Delaware law would, in that event, mandate return of the policy premiums.

5

For these reasons, the Court will grant the Espinosa Trust's motion.

**<u>Espinosa Trust's Motion For Leave to File Third Party Contribution Complaint</u>**

In January 2014, the Espinosa Trust filed a motion for leave to file a third party contribution complaint against Steven Brasner, who until October 2013 had been a co-defendant sued by Plaintiff Penn Mutual. (D.I. 241) Penn Mutual voluntarily dismissed Brasner on October 17, 2013. (D.I. 242) The Espinosa Trust asserts: "The Release executed by Penn Mutual in favor of Brasner does not provide for a judgment credit to the non-settling defendants to the extent of Brasner's pro rata share, as required under 10 Del C. § 6304(b) to bar a contribution claim. The Trust Defendants merely seek [by their pending motion] to cure the prejudice to them resulting from Penn Mutual's eleventh-hour dismissal and release of Brasner from the action and reinstate him as a party defendant for trial." (*Id.* at 2)

Rule 14(a) of the Federal Rules of Civil Procedure permits a defending party to file a third-party claim against a non-party "who is or may be liable to it for all or part of the claim against it." Leave of court to file a third-party complaint is required if joinder is sought more than 14 days after service of the original answer. *See* Fed. R. Civ. P. 14(a)(1). "A main purpose of the third party proceedings is to allow all claims growing out of the same transaction to be consolidated and treated in one proceeding and thus to eliminate many separate suits involving most of the same facts and contentions." *McGrath v. Lund's Fisheries, Inc.*, 170 F. Supp. 173, 174 (D. Del. 1959). The question of whether a third-party defendant may be brought in on a motion is discretionary with the trial judge. *See Casey v. Calmar S.S. Corp.*, 138 F. Supp. 751, 752 (D. Del. 1956).

The Court finds that reinstating Brasner as a defendant in this action will conserve

6

valuable resources for the parties as well as the Court, as compared to the alternative, which would require the Espinosa Trust to initiate a separate contribution action. Given that: (i) Brasner was only recently dismissed, after the close of the discovery period; (ii) Penn Mutual has known at least since the filing of the Espinosa Trust's original answer that the Trust's position was (and remains) that any liability it may incur is at least largely the responsibility of Brasner, making the contribution claim neither surprising nor unduly prejudicial; (iii) Penn Mutual had the ability to prevent a contribution claim by providing in its release of Brasner a reduction in the remaining defendants' potential liability, pursuant to Delaware statute, but chose not to do so; and (iv) the Espinosa Trust moved to add the contribution claim in a timely manner following its discovery of Penn Mutual's release of Brasner, Penn Mutual has not shown any basis for the Court to deny the Espinosa Trust's request.[1]

**Espinosa Trust's Motion to Exclude Rebuttal Expert Opinion of Dr. Harold Skipper**

The Espinosa Trust filed a Motion to Exclude the Expert Opinion of Penn Mutual's Rebuttal Expert, Dr. Harold Skipper. (D.I. 205) Dr. Skipper's expert report rebuts the report of one of the Espinosa Trust's experts, William Hager. The Espinosa Trust argues that the Skipper Rebuttal Report "does not meet the standards for admissible expert testimony under the Federal Rules, and it should therefore be stricken in its entirety." (D.I. 206 at 1) In particular, the Espinosa Trust claims that the Skipper Rebuttal Report only argues that Hager's opinions are improper and inadmissible legal opinions and that Hager lacks credibility; as such, the Skipper Rebuttal Report usurps the Court's role in deciding the admissibility of expert testimony and the

---

[1] The Court is not persuaded that its action today will delay trial (which has not yet been scheduled), even if Penn Mutual or Brasner seek additional discovery (despite the expiration of the discovery period) or seek to add other claims or still other parties.

7

jury's role in assessing credibility. (*Id.* at 2-3)

The admissibility of expert testimony is governed by Federal Rule of Evidence 702, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Trial judges play the role of gatekeepers in deciding whether expert testimony is admissible. *See Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 592-97 (1993). The question of whether an expert's testimony is admissible based on his qualifications, reliability, and fit is committed to the court's discretion. *See In re Paoli R.R. Yard PCD Litig.,* 35 F.3d 717, 749 (3d Cir. 1994). If the court finds a qualified expert's testimony is reliable and assists the trier of fact, the testimony should be admitted. *See id.* at 742-43.

There is no dispute that Dr. Skipper is qualified to testify on the subject of the customs and practices of the life insurance industry. Rather, the Espinosa Trust challenges Dr. Skipper's reliability and fit. In assessing the reliability of an expert's report, the Court will not attempt to determine which party's expert advances the correct conclusions, but only whether the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 152 (1999).

Dr. Skipper's report does not meet the standard for reliable expert testimony. A significant portion of Dr. Skipper's report is improper legal opinion. Another large portion of the

8

report invades the province of the factfinder, as it is an assessment of Hager's credibility. It is simply not the proper role of the rebuttal expert to decide if another expert witness offers legal conclusions, as Dr. Skipper does here. To the extent Penn Mutual believed it had grounds for challenging the admissibility of Hager's opinions, the proper procedure would have been to file a *Daubert* motion asking the Court to exclude the testimony – a motion Penn Mutual elected not to file.

The Espinosa Trust's Motion to Exclude the expert opinion of Dr. Skipper will be granted, and the expert report will be stricken in its entirety.

**Defendant Kevin Bechtel's Motion for Summary Judgment**

Kevin Bechtel filed a motion for summary judgment, contending that Penn Mutual has provided no evidence against him to support the allegations contained in the Second Amended Complaint. (D.I. 210) Bechtel cites the deposition testimony of Espinosa and her husband, Mr. Ortiz, in which they both state that they do not know who Bechtel is and that he neither spoke with them nor played a role in procuring the Espinosa policy. (*Id.* at 7-8; D.I. 210-3 Espinosa Dep. 53, 102-03; D.I. 210-5 Ortiz Dep. 107-08, 222, 224)

It is undisputed that Bechtel was employed as the Chief Executive Officer of Life Brokerage Partners, LLC ("LBP"). (Bechtel Aff. ¶ 2) LBP is a brokerage service firm that acts as a "middleman" between the independent insurance agent that originated the application from the prospective insured and the insurer. (D.I. 210 at 3) LBP performs "a variety of services [for insurers] including the labor intensive collection of medical records . . . after the independent insurance agent . . . has solicited, met with and taken an application from the prospective insured." (Bechtel Aff. ¶ 3)

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n. 10 (1986). An assertion that a fact cannot be – or, alternatively, is – genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed.R.Civ.P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a ***genuine issue for trial***." *Matsushita*, 475 U.S. at 587 (citing Fed. R. Civ. P. 56(e)) (internal quotation marks omitted; emphasis in original). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *see also Podobnik v. U.S. Postal Service*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). However, the "mere existence of some alleged factual dispute between the parties will

not defeat an otherwise properly supported motion for summary judgment;" and a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). Thus, the "mere existence of a scintilla of evidence" in support of the non-moving party's position is insufficient to defeat a motion for summary judgment; there must be "evidence on which the jury could reasonably find" for the non-moving party. *Anderson*, 477 U.S. at 252.

Here, the record demonstrates genuine issues of material fact as to the role, if any, played by Bechtel in the procurement of the Espinosa policy, and what facts he knew when he made representations to Penn Mutual regarding the Espinosa policy application. Plaintiff has adduced evidence of the role Bechtel played in his brokerage company and his involvement with other purported STOLI schemes prior to the Espinosa Policy. (D.I. 218-3 Bechtel Dep. 88-89, 93; D.I. 218-3 Wagner Dep. 24) The record contains documents from which a reasonable factfinder could find that Bechtel and Brasner "communicated regularly regarding the Espinosa deal" and that "Bechtel knew the 'facts' to be that investors had approved the Espinosa deal and would be funding the Espinosa policy." (D.I. 218 at 4) (D.I. 218-3 Bechtel Dep. 97-98; D.I. 218-1 at Brasner/Espinosa_000032; D.I. 218-3 at Brasner/Espinosa_000041)

Additionally, Penn Mutual has provided the affidavit of former defendant Steven Brasner,

11

who explains that in his role as an insurance broker he conspired with Bechtel to defraud Penn Mutual by drafting the insurance policy application to represent that the insured had no intent to sell the policy, when in fact the insured received "3% cash upfront in exchange for the beneficial interest in the insured's policy." (D.I. 218-1 Brasner Aff. ¶¶ 13, 10) "Kevin Bechtel and his employees at Life Brokerage Partners dictated much of the information represented on the applications, including the purpose for the applied-for policy and the owner and beneficiary of the applied-for policy." (D.I. 218-1 Brasner Aff. ¶ 23) While Bechtel will be able to challenge Brasner's credibility at trial, the Court may not resolve a credibility dispute at the summary judgment stage, but must instead take the evidence in the light most favorable to Penn Mutual. *See Kreimer v. Bureau of Police for Morristown*, 958 F.2d 1242, 1250 (3d Cir. 1992) (stating that "conflicts of credibility should not be resolved on a hearing on the motion for summary judgment unless the opponent's evidence is too incredible to be believed by reasonable minds"). If the jury believes Brasner, it could reasonably find in favor of Penn Mutual.

Moreover, there is a genuine dispute of fact as to whether Bechtel signed and/or initialed documents found in the Espinosa policy application file, and the Court cannot at this stage of the proceedings credit Bechtel's contention that these are forgeries. *See Ingersoll-Rand Fin. Corp. v. Anderson*, 921 F.2d 497, 501 (3d Cir. 1990) (finding summary judgment was inappropriate where allegation of forgery created genuine issue of material fact).

Accordingly, the Court will deny Bechtel's motion for summary judgment.

## CONCLUSION

An appropriate order will be issued.